## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.                                                                    Case No. 6:10-CR-10186-01-JTM

RAYMOND L. ROGERS,

*Defendant.*

## MEMORANDUM AND ORDER

Defendant Raymond L. Rogers brings a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. 146).  He subsequently filed an identical Motion for Summary Judgment (Dkt. 160).  Because review of defendant's motion and the accompanying court record conclusively show that he is not entitled to relief, this Court denies the motion without an evidentiary hearing.

### I.      Factual and Procedural Background

The following factual account is taken from the jury trial record as well as the facts established by the Tenth Circuit on appeal.  *See United States v. Rogers*, 520 Fed. Appx. 727 (10th Cir. Apr. 5, 2013).  On the morning of December 1, 2010, three black males entered a branch of the Equity Bank in Wichita, Kansas.  All three wore masks and gloves and two of them brandished handguns.  One of the armed men covered the lobby area and provided lookout while

the other two jumped the counter, ordered the bank's staff to get on the ground, and proceeded to empty the teller drawers. The two men then ordered the employees to open the vault and threatened to shoot if the employees did not comply. The men were able to obtain $102,743 in cash and subsequently fled the scene in a stolen SUV. Unbeknownst to the men, the cash contained "bait money," which is comprised of bills whose serial numbers have been pre-recorded by bank staff, and "dye-packs," which are bundles of cash that contain a canister of tear gas and red dye that is activated when it is removed and when it passes through a special "activation zone" within the bank itself.

A few moments after the robbery, a nearby motorist spotted the stolen SUV, noticed that it was filled with red smoke, and called 911. When officers arrived on scene, they discovered that the occupants had abandoned the SUV. The vehicle contained a large sum of cash that was stained with red dye as well as residual smoke from the release of the dye.

At some point thereafter, officers got word that law enforcement was engaged in a car pursuit of a second stolen SUV. The vehicle contained three passengers. This SUV pulled into an apartment complex and two individuals bailed out of the vehicle while it was still moving. The driver left the SUV at some point thereafter.

Police pursued the three individuals, who had split up, through the apartment complex. The driver was apprehended after being shot by police. Upon hearing screaming from one of the buildings, officers entered building 12 of the complex, located the source of the screaming, and apprehended the first passenger in apartment 1211. Police then started clearing apartments, searching for the third individual.

Eventually, the officers came to apartment 1217. While removing five individuals from the unit, police "saw a black male stick his head out from the southwest bedroom corner or

southwest bedroom into the hallway and look real quick and then go back into the . . . bedroom." Dkt. 129, at 60.  Police handcuffed this individual, who was later identified as defendant.

At the time of his apprehension and arrest, defendant wore a white t-shirt stained with red dye near his midsection.  Forensics determined that the dye on the shirt was consistent with the dye contained in the bank dye-pack.  A search of apartment 1217 uncovered $62,300 in cash wrapped in two bags in the bathroom's toilet tank.  Some of the bills were stained with red dye and some were bait money from Equity Bank.  Inside the stolen SUV, which had ultimately crashed into other vehicles parked at the apartment complex, police found a dye-stained bag, envelopes from Equity Bank, and several thousand dollars in dye-stained bills, including bait money.  The officers also found a wool cap with holes cut in it and two loaded semiautomatic handguns—an Intratec AB-10 and a Bersa.

On December 7, 2010, defendant, along with his two co-defendants, was charged by the grand jury with one count of bank robbery, one count of possessing and brandishing a firearm in furtherance of the bank robbery, and being a felon in possession of a firearm (Dkt. 12).  On June 21, 2011, defendant was charged in a superseding indictment with additional counts of bank robbery, possessing and brandishing a firearm in furtherance of the bank robbery, and being a felon in possession of a firearm (Dkt. 54).   The superseding indictment was dismissed on November 29, 2011 (Dkt. 91).

On December 1, 2011, a jury convicted defendant of robbing a federally-insured bank in violation of 18 U.S.C. § 2113(a); brandishing a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1)(A); and possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) (Dkt. 103).  On April 16, 2012, defendant was sentenced by this court to 234 months imprisonment.  Defendant directly appealed his conviction and sentence on the count of

bank robbery to the United States Court of Appeals for the Tenth Circuit. *See Rogers*, 520 Fed. Appx. 727. The court affirmed his conviction and sentence. Defendant did not file a petition for writ of certiorari to the United States Supreme Court.

On December 2, 2013, defendant filed a Motion to Vacate, Set Aside, or Correct a sentence pursuant to 28 U.S.C. § 2255 (Dkt. 146). He filed two motions to supplement his petition on December 16, 2013 (Dkt. 148), and March 18, 2014 (Dkt. 155). In his petition and supplements, defendant claims ineffective assistance of both trial and appellate counsel based on the following alleged errors:

1. Failure to challenge the lawfulness of the search and arrest

2. Failure to seek dismissal based on the Speedy Trial Act

3. Failure to move for dismissal of the original indictment based on vindictive prosecution and/or prosecutorial misconduct

4. Failure to investigate and interview witnesses

5. Failure to raise a fair cross-section claim

6. Failure to allow defendant to testify on his own behalf

7. Failure to object to the bank robbery jury instruction (number 18)

8. Failure to object to the aiding and abetting jury instruction (number 21)

9. Failure to move for dismissal of Count Two (brandishing a firearm during the course of a bank robbery) on the basis that Count One (bank robbery) was not a qualifying predicate "crime of violence"

10. Failure to challenge the 84-month sentence on Count Two (brandishing a firearm during the course of a bank robbery) on the basis of *Apprendi* and *Alleyne*

11. Failure to challenge the sufficiency of the evidence in Count Two (brandishing a firearm during the course of a bank robbery) and Count Three (felon in possession)

12. Failure to raise a cumulative error claim

Dkts. 146, 148, 155.

On October 9, 2014, defendant filed a Motion for Summary Judgment alleging ineffective assistance of counsel claims identical to assignments of error 1, 7, and 11 of his § 2255 Motion (Dkt. 160).   Based on a review of the record, this Court finds Petitioner's assignments of error in both motions to be without merit.

## II.    Legal Standard

Under § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> [t]he judge who receives the motion must properly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . .  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).   The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.  *See Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).  An evidentiary hearing is not necessary where a § 2255 motion contains

factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.  *See id.* (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."  *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006).  The petitioner may overcome this procedural bar by showing either of "two well recognized exceptions."  *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005).  "First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered."  *United States v. Molina*, 2013 U.S. Dist. LEXIS 174618, at *12 (D. Kan. Dec. 13, 2013) (citing *Cervini*, 379 F.3d at 990).  Cause may "be established by showing that counsel rendered constitutionally ineffective assistance."  *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (internal citations omitted).  Second, a petitioner must show that the "failure to consider the federal claims will result in a fundamental miscarriage of justice."  *Molina*, 2013 U.S. Dist. LEXIS 174618, at *12 (citing *Cervini*, 379 F.3d at 990); *see also Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

### III.    Analysis

Defendant requests this Court set aside the jury's guilty verdict and his sentence based on numerous alleged errors due to ineffective assistance of counsel.  In instances where defendant makes the same claim against both his trial and appellate counsel, the alleged errors will be discussed together.

### A.  Ineffective Assistance of Counsel

In general, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.  466 U.S. 668 (1984).  Under *Strickland*, a petitioner claiming ineffective assistance of counsel must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.  *Id*. at 687-88.  To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."  *Id*. at 690.  This standard is "highly demanding."  *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."  *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459).  The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.  *See Edens v. Hannigan*, 87 F.3d 1109 (10th Cir. 1996).  "[E]very effort should be made to eliminate the distorting effects of hindsight."  *Id*. at 1114 (quoting *Strickland*, 466 U.S. at 689).

With regard to the second prong, a petitioner "must show there is a reasonable probability that, but for his counsel's professional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*.  This requires the court to focus on "the question [of] whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In cases where a petitioner pleads guilty, the Supreme Court has held that prejudice can only be shown if there is "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90.

In addition to this basic standard, the Tenth Circuit has also noted that the analysis of whether *appellate* counsel's omission of an issue on appeal constitutes ineffective assistance begins with an examination of the merits of the issue.  *Bushyhead v. Wade*, 2014 U.S. App. LEXIS 16534, at *7-8 (10th Cir. Aug. 27, 2014) (citing *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005)).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance.  On the other hand, if the omitted issue has merit but is not so compelling, we must examine the issue in relation to the rest of the appeal.  Of course, if the issue is meritless, its omission will not constitute a deficient performance.  And habeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue.

*Id*. at *8 (internal citations omitted).

### 1.   Failure to Challenge the Lawfulness of the Search and Arrest

Defendant first claims ineffective assistance of counsel due to his trial counsel's alleged failure to file a motion to suppress the evidence found in apartment 1217, including the white T-shirt stained with red dye and the $62,300 in cash.  The court finds no merit in this assignment of error.

First and foremost, defendant had no Fourth Amendment standing to challenge the search of the apartment.

> In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)).  "In order for a nonresident to possess a right to privacy in a residence, they must be either an overnight guest or a social guest at the time of the illegal search."  *United States v. Poghosyan*, 2010 U.S. Dist. LEXIS 117271, at *28 (D. Kan. Oct. 28, 2010) (citing *United States v. Poe*, 556 F.3d 1113, 1122 (10th Cir. 2009)).  Here, defendant: (1) did not live in the apartment, and (2) was not there as a social guest.  Instead, defendant claimed that he was in the unit to conduct a business transaction (i.e., to determine what one of the lawful occupants of the apartment would charge him to conduct a vehicle tune-up on his car).

Even assuming that defendant had standing to challenge the search, it is clear that police had a right to enter the apartment due to exigent circumstances.  "[A] warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling."  *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).  Here, police were in hot pursuit of

the three individuals who had fled from the stolen SUV whom they knew were in the apartment complex.

Moreover, once inside the apartment, officers had probable cause to arrest defendant. "Probable cause to arrest requires a showing that under the totality of the circumstances a reasonable person would believe that an offense had been committed by the person arrested." *United States v. Ramirez*, 2012 U.S. Dist. LEXIS 142697, at *6 (D. Kan. Oct. 2, 2012) (citing *United States v. Munoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008)). Here, an officer saw defendant "stick his head out from the southwest bedroom corner or southwest bedroom into the hallway and look real quick and then go back into the . . . bedroom." Dkt. 129, at 60. These suspicious actions created probable cause that defendant was one of the suspects that police were looking for.

Therefore, the court finds that counsel made a reasonable strategic decision not to file a motion to suppress the evidence seized in the apartment because there was no legal basis to support such a motion. Defendant's first assignment of error is dismissed.

### 2.   Failure to Seek Dismissal based on a Speedy Trial Act Violation

Defendant next argues that his attorney was ineffective for failing to raise a Speedy Trial violation. The Speedy Trial Act "requires that a defendant be tried within seventy days from the filing date of the indictment or from the date on which defendant appears before a judicial officer, whichever date is later." *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998).

At the outset, it is unclear from defendant's motion whether he is alleging a statutory violation of the Act itself, or whether he is seeking relief solely based on a constitutional violation. Defendant alleges that "he was deprived of a meritorious Speedy Trial dismissal

-10-

request in violation of the Speedy Trial Act." Dkt. 147, at 13.  To the extent that defendant is claiming a *statutory* violation, his claim is not cognizable in the § 2255 context.  The Tenth Circuit has held that it cannot grant a certificate of appealability where a habeas petitioner alleges only a statutory violation.  *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006). Rather, a certificate of appealability "may only issue when the applicant 'has made a substantial showing of the denial of a *constitutional* right.'"  *Id*. (quoting 28 U.S.C. § 2253(c)(2)) (emphasis in original)).

To the extent, however, defendant alleges a *constitutional* violation, he has not alleged facts which would establish that counsel's failure to raise the issue was deficient or prejudicial. The record shows that, before trial, counsel for defendant as well as counsel for co-defendant David Hollis, filed joint motions to continue the trial under 18 U.S.C. § 3161(h)(7).  Dkts. 48, 65.  In the first motion, counsel requested more time to prepare for trial in light of defendant's recently identified DNA match in another unrelated and unindicted bank robbery.  Dkt. 48, at 2. In the second motion, counsel requested more time given the government's filing of a superseding indictment in defendant's case.  Dkt. 65, at 2-3.

This court granted both motions, finding that "the period of delay resulting from the extension granted pursuant to this Order shall be excludable time as provided for in 18 U.S.C. 3161(h)(7) in that the ends of justice served by granting such continuance outweigh the best interest of the public and the Defendant in a speedy trial." Dkts. 70, 79.  There is little doubt that counsel's reasoning for the delay was justified; the other option was for counsel, and thereby defendant, to proceed to trial unprepared.  Furthermore, both orders to continue specifically noted that the interim time was *excluded* by the Speedy Trial Act and thereby excluded from speedy trial computation.

The court also notes that defendant does not claim that the two delays that resulted from the continuances prejudiced his ability to prepare his case and/or defend himself against the charges. Nor does he identify any evidence or witnesses that were lost as a result of the delay. Therefore, defendant simply has not overcome the presumption that his defense counsel performed adequately under *Strickland*. As such, his second assignment of error is dismissed.

### 3. Failure to Move for Dismissal due to Vindictive Prosecution and/or Prosecutorial Misconduct

Defendant next alleges that counsel failed to raise a "vindictive prosecution" and/or "prosecutorial misconduct" claim during the pre-trial and trial stages. More specifically, defendant argues that the government sought and obtained the superseding indictment solely because he would not plead guilty to the charges contained in the original indictment. Dkt. 146, at 8. Defendant's assignment of error is without merit.

As a general rule, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). There are, of course, limits on this discretion; however, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (internal citations omitted).

Here, defendant makes no allegations of such selectivity; rather, he argues that the only reason the government filed the superseding indictment was to force him into pleading guilty on the original indictment. The United States Supreme Court has held that "[w]hile confronting a

defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id*.

Therefore, defendant fails to show that counsel's alleged failure to file a motion alleging vindictive prosecution was outside the wide range of professionally competent assistance. As such, this assignment of error is dismissed.

### 4. Failure to Investigate and Interview Witnesses

Defendant next alleges that counsel failed to properly investigate his case. Specifically, defendant alleges that counsel failed to interview any witnesses who were in apartment 1217 at the time of his arrest, including Raquel Mendia ("Mendia"), who defendant alleges changed her story on the last day of trial. According to the trial transcript, Mendia originally told police that she did not know who opened the apartment door to defendant. Dkt. 132, at 99. However, during her testimony, she stated that *she* opened the door. Dkt. 132, at 82. Mendia indicated that her conscience got the better of her and she was worried about what would happen to her daughter if she did not tell the truth under oath. Dkt. 132, at 99-100. Defendant claims that if counsel had spoken to Mendia prior to her testimony he could have obtained a sworn affidavit from Mendia as to her first statement and also could have "given her 'legal' lawyer advise[sic] about what to do if the government started to threaten or harass her." Dkt. 14-15. Defendant's argument is without merit.

As a general rule, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all

the circumstances, *applying a heavy measure of deference to counsel's judgments*." *Strickland*, 466 U.S. at 691 (emphasis added). "An applicant who challenges his counsel's effectiveness because of his failure to investigate must establish that the decision not to investigate was unreasonable from counsel's perspective at the time the decision was made." *Hughes v. Kan. AG*, 2013 U.S. Dist. LEXIS 2607, at *12 (D. Kan. Jan. 8, 2013) (citing *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005)).

Here, defendant provides no indication that counsel had any way of knowing that Mendia would change her story more than a year later. Nor does he provide any reason, credible or otherwise, that interviewing other witnesses who were in apartment 1217 on the day of his arrest would have unearthed favorable or exculpatory evidence. As such, the court cannot now say that counsel's actions fell below an objective standard of reasonableness. Therefore, defendant's assignment of error is dismissed.

### 5. Failure to Raise Fair Cross-Section Claim

Defendant argues that counsel "rendere[d] ineffective assistance when he failed to object to the under representation of black m[e]n or any minority males in the grand jury pool or the petit jury at trial." Dkt. 148, at 9. According to defendant, there were only two black males in the grand jury pool and none selected for trial. Dkt. 148, at 9-10. Defendant's assignment of error is without merit.

The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*, states, in relevant part: "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. This requirement parallels a defendant's Sixth Amendment right to trial by an impartial jury. *United*

*States v. Frazier*, 2010 U.S. Dist. LEXIS 107677, at *8 (D. Kan. Oct. 8, 2010) (citing *United States v. Powell*, 2004 U.S. Dist. LEXIS 12691, at *6 (D. Kan. May 10, 2004)).  To establish a prima facie violation of the Sixth Amendment fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in veniries from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  "Defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'"  *Frazier*, 2010 U.S. Dist. LEXIS 107677, at *9 (quoting *Batson v. Kentucky*, 476 U.S. 79, 85 (1986)).  Nor does the Sixth Amendment require that "petit juries actually chosen . . . mirror the community and reflect the various distinctive groups in the population."  *Batson*, 476 U.S. at 86 n.6.

Here, defendant does not allege that his counsel could have met *any* of these requirements to challenge either the grand or trial jury, let alone all of them.  As such, defendant cannot show that counsel's strategic decision not to raise a fair cross-section claim was unreasonable.  Therefore, defendant's assignment of error is dismissed.

### 6.  Failure to Allow Defendant to Testify

Defendant next alleges ineffective assistance because counsel failed to allow him to testify, despite his request to do so, in violation of his Fifth and Sixth Amendment rights.

A criminal defendant has a constitutional right to testify on his own behalf at trial.  *Rock v. Ark.*, 483 U.S. 44, 49-52 (1987).

> The decision whether to testify lies squarely with the defendant; it is not counsel's decision.  Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him.  Counsel

-15-

should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy.

*United States v. Hollis*, 2006 U.S. Dist. LEXIS 39598, at *7 (D. Kan. June 14, 2006) (quoting *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004)). Here, there was some indication, at least before the trial started, that defendant intended to testify on his own behalf. Dkt. 133, at 3-7. Counsel, however, indicated on the record that discussions with his client on this subject were ongoing. Dkt. 133, at 3-7.

Defendant offers no additional evidence, other than this conference just prior to the presentation of the defense's case in chief, to support his claim that he fully intended to testify at trial. Defendant's trial counsel, Sean C. McEnulty ("McEnulty"), submitted an affidavit that swore as follows:

1. That I specifically asked the defendant, after the conclusion of the testimony of [his] wife . . . the only witness to testify on behalf of the defendant, if the defendant wanted to testify. That the defendant had the right and present opportunity to testify.

2. That the defendant, clearly and without hesitation, and being previously informed and educated concerning his right to testify, informed me by oral statement that he believed his wife had testified in a favorable manner on his part, and that he found it unnecessary to personally testify. That he was satisfied by the evidence put forth by his wife, and did not desire to testify or to call any other additional witnesses.

Dkt. 156-1, at 2-3.

"To ensure his constitutional rights, 'a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.'" *United States v. Williams*, 139 Fed. Appx. 974, 976 (10th Cir. July 18, 2005) (quoting *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000)). "When a defendant does

-16-

not alert the trial court of a disagreement . . . waiver of the right to testify may be inferred from the defendant's conduct."   *Id.*   Here, there is no indication in the record that defendant ever alerted the trial court as to a disagreement between himself and his counsel about whether he should testify.   Based on this lack of evidence, as well as counsel's affidavit, the court infers that defendant waived his right to testify.   As such, defendant fails to establish the first *Strickland* prong.   His assignment of error is therefore dismissed.

### 7.   Failure to Object to Bank Robbery Jury Instruction (No. 18)

Defendant alleges that both his trial and appellate counsel ineffectively failed to object to jury instruction number 18, which instructed the jury on the element of the offense charged in Count One, namely bank robbery, in violation of 18 U.S.C. § 2113(a).   According to defendant, the court instructed the jury on the elements of bank robbery contained in 18 U.S.C. § 2113(d), with which he was *not* charged.

Here, the government concedes that defendant's counsel was indeed ineffective, at least with regard to the first *Strickland* prong, in failing to object to the bank robbery jury instruction. In Count One of the indictment, the government charged that defendant "by force, violence, and intimidation did take from the person or presence of another, money, namely $102,743.00 United States Currency, belonging to, and in the care, custody, control, management, and possession of, the Equity Bank in Wichita, Kansas, a bank whose deposits were then insured by the [FDIC]." Dkt. 12, at 1.   This language tracks that of 18 U.S.C. § 2113(a), which states:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

28 U.S.C. § 2113(a).  However, this court issued the following jury instruction, to which

counsel did not object:

> This law makes it a crime to take from a person by force, violence, and intimidation any money in the possession of a federally insured bank, and in the process of so doing, *to put in jeopardy the life of any person by the use of a dangerous weapon or device*.

Dkt. 98, at 20 (emphasis added).  This instruction more accurately tracks the language of 28

U.S.C. § 2113(d), which states:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or *puts in jeopardy the life of any person by the use of a dangerous weapon or device*, shall be fined under this title or imprisoned not more than twenty-five years, or both.

28 U.S.C. § 2113(d) (emphasis added).  As such, the court finds, as the government concedes,

that the reasonableness prong of *Strickland* is satisfied.

However, defendant still must show that counsel's failure created prejudice.  The Tenth

Circuit's pattern jury instructions for bank robbery are useful here, especially since the jury

instructions in this case were so modeled.  The pattern jury instruction states:

> A conviction under section 2213(d) requires the government to prove that the defendant (a) 'created an apparently dangerous situation, (b) intended to intimidate his victim to a degree greater than the mere use of language, (c) which does, in face, place his victim in reasonable expectation of death or serious bodily injury.'

TENTH CIRCUIT PATTERN JURY INSTRUCTIONS, CRIMINAL § 2.77 (2011)

(quoting *United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990)).  In the notes,

the Tenth Circuit states that the instruction

> Presupposes that the indictment charges a violation of subsection (a) and (d) in the same count. If a subsection (d) violation is not alleged, the fourth element and its corresponding definitions would be deleted.  Also, when a violation of subsections (a) and (d) is alleged in one count, *the jury should be instructed in an appropriate case that a violation of subsection (a) alone, i.e., the first three*

-18-

> *elements above, is a lesser included offense of the alleged violation of subsections*
> *(a) and (d) combined*, i.e., all four elements.

*Id.* (emphasis added). While it is clear that the jury instruction should not have included the fourth element, because § 2113(a) is a lesser included offense of § 2113(d), the jury in this case necessarily had to find a violation of § 2113(a) in their deliberations. In other words, the jury considered the required elements of § 2113(a), the crime that defendant was actually charged with, and found that the government proved its case beyond a reasonable doubt.

The natural concern, of course, is that a violation of § 2113(a) carries a penalty of up to twenty years in prison while a violation of § 2113(d) carries a penalty up to twenty-five years in prison. *See* 18 U.S.C. § 2113(a), (d). However, this sentencing discrepancy is of no concern here, as this court sentenced defendant to 150 months (12.5 years) for Count One, well below the statutory maximum allowed by § 2113(a). As such, defendant cannot show prejudice as a result of counsel's error. His assignment of error is dismissed.

### 8. Failure to Object to Aiding and Abetting Instruction on Count Two (No. 21)

Likewise, defendant argues that counsel rendered ineffective assistance when he "did not object to the Trial Court's 924(c) aiding and abetting jury instructions." Dkt. 155, at 2. In support of his position, defendant relies upon the United States Supreme Court Case *Rosemond v. United States*, 134 S. Ct. 1240 (Mar. 5, 2014).[1] However, counsel could not have ineffectively failed to raise this claim during trial because this claim was *unavailable* during defendant's trial. The *Rosemond* opinion was issued on March 5, 2014. Defendant's trial concluded on December 1, 2011. When reviewing ineffective assistance of counsel claims, the Tenth Circuit has rejected

---

[1] In *Rosemond*, the Supreme Court held that a jury instruction on aiding and abetting under § 924(c) should address the defendant's advance knowledge of a gun. 132 S. Ct. at 1249-50. *See also United States v. Davis*, 750 F.3d 1186, 1193 (10th Cir. 2014) (noting that "[a]fter *Rosemond*, a jury instruction on aiding and abetting § 924(c) should address the defendant's advance knowledge of the gun.").

claims "where a defendant 'faults his former counsel not for failing to find existing law, but for failing to predict future law' and [has] warned 'that clairvoyance is not a required attribute of effective representation.'" *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) (quoting *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir. 1995)). Furthermore, there is no indication in the *Rosemond* decision that it is to be retroactive. 134 S.Ct. at 1240. As such, defendant cannot show that counsel's performance was somehow unreasonable. The assignment of error is dismissed.

### 9. Failure to Move for Dismissal of Count Two

Defendant alleges that counsel was ineffective for "failing to move for dismissal of count 2 during sentencing stage after movant was unconstitutionally convicted of it." Dkt. 146, at 7. Count Two charged that defendant (and his co-defendants) committed a violation of 18 U.S.C. § 924(c)(1)(A) because they "did knowingly possess firearms and brandish firearms . . . in furtherance of a crime of violence . . . to wit: Bank Robbery . . . " Dkt. 12, at 2. Defendant appears to argue that bank robbery is not a "crime of violence" that would support prosecution under 18 U.S.C. § 924(c). Defendant is incorrect.

First and foremost, the Tenth Circuit has held that "[b]ank robbery is a crime of violence." *United States v. Thody*, 978 F.2d 625, 630 n.2 (10th Cir. 1992). Furthermore, the plain language of the bank robbery statute itself (28 U.S.C. § 2113(a)) sets forth the necessary elements to make the crime one of violence. Under 18 U.S.C. § 924(c)(3), a crime of violence is defined as:

an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Likewise, the offense of bank robbery, defined in 18 U.S.C. § 2113(a), has as an element the use, attempted use, or threatened use of physical force against the person or property of another.  *See* 18 U.S.C. § 2113(a) (defining bank robbery as "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . .").

Therefore, defendant cannot show that counsel's alleged failure to move for dismissal of Count Two was unreasonable.  As such, defendant's assignment of error is dismissed.

### 10. Failure to Challenge 84-Month Sentence on Count Two

Defendant next claims ineffective assistance of counsel with respect to both his sentencing and appellate counsel for their alleged failure to challenge defendant's 84-month sentence on Count Two.  Defendant argues that, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), he should have been sentenced to no more than sixty (60) months.  Defendant's argument is without merit.

To best understand defendant's argument, a bit of statutory and case background is helpful.  Section 924(c) provides that

> any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . (i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A)(i).  The statute provides a higher mandatory minimum, seven years, if the firearm is "brandished."  18 U.S.C. § 924(c)(1)(A)(ii).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 491. However, the Court subsequently decided *Harris v. United States*, 536 U.S. 545 (2002), which held that "brandishing" a firearm, which sets a seven-year mandatory minimum sentence in § 924(c) prosecutions but does not increase the *maximum* sentence, was a sentencing factor for the judge, not the jury, to consider. 536 U.S. at 556. The Court overruled *Harris* in *Alleyne*, stating as follows:

> *Harris* drew a distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum. We conclude that this distinction is inconsistent with our decision in *Apprendi v. New Jersey*, and with the original meaning of the Sixth Amendment. Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury. Accordingly, *Harris* is overruled.

133 S. Ct. at 2155 (internal citations omitted).

Although the facts of *Alleyne* are very similar to the case at hand, it was not decided until June 17, 2013, more than a year after defendant was sentenced on April 17, 2012. As such, the law at the time of defendant's sentencing was that of *Harris*, which held that an increase in *mandatory minimums* was a question for the judge, not the jury. As stated above, the Tenth Circuit has rejected ineffective assistance claims "where a defendant faults his former counsel not for failing to find existing law, but for failing to predict future law . . . ." *Bullock*, 297 F.3d at 1052. Furthermore, the Tenth Circuit has held that *Alleyne* is not retroactive on collateral review. *See In Re Payne*, 733 F.3d 1027 (10th Cir. 2013) (holding that *Alleyne* was not made retroactive). As such, counsel's alleged failure to challenge defendant's 84-month sentence was not a failure at all and would have been irrelevant based on the law at the time of defendant's sentencing. Defendant's assignment of error is therefore dismissed.

**11. Sufficiency of the Evidence as to Counts Two and Three**

Defendant's next claims challenge the effectiveness of his appellate counsel with regard to an alleged failure to challenge the sufficiency of the evidence for Counts Two and Three.  In support of his claims, defendant alleges that the government's evidence did not tie him to either the bank robbery or the guns used to commit the robbery.  Dkt. 148, at 5-6.  Defendant argues that

> [t]he evidence adduced only proved that Movant was arrested in a home where US currency linked to the bank was found . . . The government's evidence only placed Movant in a dwelling where US currency was discovered after the robbery had taken place, yet no firearms was ever discovered in the home.

Dkt. 148, at 5-6.  Defendant offers no evidence that appellate counsel's alleged failure to challenge the sufficiency of the evidence as to Counts Two and Three was objectively unreasonable.

However, even assuming that it was somehow unreasonable, defendant's claim fails under the prejudice prong.  Appellate counsel challenged the sufficiency of the evidence with regard to Count One, which the Tenth Circuit ultimately rejected, finding that "the government presented ample evidence to support the jury's finding that Defendant was one of the three men who robbed Equity Bank."  *Rogers*, 520 Fed. Appx. at 729.  Since the government presented the same evidence at trial to support Count One as it did to support Counts Two and Three, this court can infer that the Tenth Circuit would have also rejected any challenge to Counts Two and Three.

Furthermore, while this court acknowledges that the evidence adduced at trial established that only two of the three robbers had guns, this court instructed the jury that it could convict defendant on Count Two under an aiding and abetting theory if it found: (1) that someone else

committed the charged crime, and (2) that defendant "intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about." Dkt. 98, at 25. Even if defendant was the one robber who did *not* have a gun, it is clear that the evidence overwhelmingly established that the robber without the gun intentionally participated in the robbery. For example, during her trial testimony, one of the bank tellers who was present during the robbery stated that once she opened the vault, two men, including one who did not have a gun, starting taking money from the vault and putting it into a laundry bag. Dkt. 131, at 27. Additionally, it is clear that, at the time of his arrest, defendant was found wearing a white t-shirt stained with red dye. *Rogers*, 520 Fed. Appx. at 729. A search of apartment 1217, which was the apartment where defendant, not any of his co-defendants, was found, revealed more than $62,000 in cash, some of which was stained with red dye and some of which was bait money from Equity Bank. *Id*. Therefore, defendant cannot show prejudice as a result of appellate counsel's alleged failure. The assignment of error is dismissed.

### 12. Failure to Raise Cumulative Error Claim

Finally, defendant alleges that his due process rights were violated "[d]ue to the many 'Cumulative Effects' of Counsel's errors." Dkt. 146, at 8.

> True to its name, cumulative error analysis considers the effect of errors—not of nonerrors. In assessing the errors' cumulative effect, the court is to consider the entire record, paying particular weight to factors such as the nature and number of errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose . . . and the strength of the government's case.

*United States v. Hargrove*, 2013 U.S. Dist. LEXIS 128070, at *29 (D. Kan. Sept. 9, 2013) (internal citations omitted); *see also Bunton v. Atherton*, 613 F.3d 973, 990 (10th Cir. 2010)

(noting that "the cumulative error doctrine does not apply where . . . we have not found the existence of two more actual errors.").

Defendant has been unable to show error in *any* of his grounds for relief.  As such, his assignment of error is dismissed.

**B.  Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to issue or deny a certificate of appealability upon entering a final adverse order.  *Smith v. United States*, 2013 U.S. Dist. LEXIS 64825, at *10-11 (D. Kan. May 7, 2013).  This certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2254(c)(2).  The applicant must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further."  *Smith*, 2013 U.S. Dist. LEXIS 64825, at *11 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Defendant fails to meet this standard.  The court therefore declines to issue a certificate of appealability for this order.

**IT IS THEREFORE ORDERED** this 9th day of December, 2014, that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Dkt. 146) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that since defendant's Motion for Summary Judgment alleges identical claims to those contained in his § 2255 motion, the Motion for Summary Judgment (Dkt. 160) is hereby **DENIED.**

s/J. Thomas Marten,
J. Thomas Marten
Chief Judge

-25-